PITTMAN, Judge.
Joel Lynn Summers (“the father”) appeals from a judgment of the Lauderdale Circuit Court that divorced him from Cayce Lane Summers (“the mother”), ordered him to pay $760 per month as child support, awarded the mother primary physical custody of the child born of the marriage, fashioned a division of the couple’s marital assets, and declined to sanction the mother in response to the father’s allegations that she suborned perjury during trial. We affirm in part, reverse in part, and remand with instructions.
The record shows that the parties married in 2000 after having lived together for approximately two years. In 2007, the father filed simultaneously a petition for protection from abuse and a complaint in which he sought a divorce, temporary custody of the parties’ minor child pending a hearing, and an equitable division of the marital estate. After several procedural delays, the case was tried in 2008 on one day in June, two days in August, and one day in November. That trial featured the testimony of the mother, the father, relatives of both parties, and a psychiatrist who had treated the mother. The trial court entered its judgment in December 2008 and denied the father’s postjudgment motion in January 2009, after which the father timely appealed to this court.
The father asserts four primary contentions on appeal, the first being that the trial court erred in failing to sanction the mother for her alleged subornation of perjured testimony. At the June hearing, a witness called by the mother testified that, within the first few years after the parties were married, the father had given the witness cocaine in exchange for sexual favors. In rebuttal, the father brought to the August hearings his own witness, a private detective he had hired to gather information about the mother’s witness. That detective produced at trial a tape recording on which the mother’s witness could be heard admitting to having testified falsely in this case in exchange for money at the mother’s request. The father also adduced an unverified, handwritten document purporting to be the witness’s formal confession of his perjury; the document described an “older, dark-haired” woman as the one who had paid the witness. However, the father made no attempt to adduce evidence showing that the mother (who, incidentally, has blonde hair) knew that the testimony was false when given, much less demonstrating that the mother suborned the allegedly perjured testimony. Given the evidence before it, the trial court had no logical basis for deciding whether the witness’s testimony, the witness’s audiotaped claim, the unverified “confession,” or none of them, represented the truth.
As the father notes, perjury and the subornation of perjury are crimes in Alabama, see Ala. Code 1975, §§ 13A-2-23 *187 and 13A-10-101 et seq. However, the determination whether a party is due to be sanctioned is within the discretion of the trial court, Shonkwiler v. Kriska, 780 So.2d 703, 706 (Ala.Civ.App.2000), and a party can be punished for criminal contempt of court in the manner sought by the father “only upon an adjudication based upon proof of guilt beyond a reasonable doubt.” Id. Given the equivocal evidence presented to the trial court, we cannot conclude that the trial court acted outside its discretion by failing to sanction the mother for subornation of perjury in its final judgment.
The father’s second contention is that the trial court erred in awarding custody of the parties’ minor child to the mother in view of the “best interests” test, the mother’s lengthy and freely admitted history of substance abuse and mental-health problems, the mother’s alleged procurement of perjured testimony (which we have already discussed), and the issuance of a protection order entered against the mother earlier in the proceedings. The mother admitted that she had taken a variety of prescribed painkillers and antidepressants as well as illegal drugs beginning in her teen years; that drug abuse persisted through two miscarried pregnancies during the parties’ marriage up to the time she became pregnant with the child whose custody is at issue in this appeal. Aside from those admissions, pertinent evidence was provided primarily in the form of trial testimony in which the mother and the father flatly contradicted each other’s accounts in large measure.
Our standard of review as to the trial court’s custody determination is deferential:
“ ‘A trial court’s custody determination following the presentation of ore tenus evidence is presumed correct, and that judgment will not be set aside on appeal absent a finding that the trial court abused its discretion or that its determination is so unsupported by the evidence as to be plainly and palpably wrong.’ Steed v. Steed, 877 So.2d 602, 604 (Ala.Civ.App.2003). ‘This court may not substitute its judgment for that of the trial court.’ Somers v. McCoy, 777 So.2d 141, 142 (Ala.Civ.App.2000). ‘The controlling consideration in child-custody matters is always the best interests of the child.’ Patrick v. Williams, 952 So.2d 1131, 1140 (Ala.Civ.App.2006).”
McCartney v. McCartney, 11 So.3d 213, 220-21 (Ala.Civ.App.2007). Moreover, when a trial court hears conflicting testimony, we must review the evidence in a light that favors the prevailing party. McClellan v. McClellan, 959 So.2d 658, 661 (Ala.Civ.App.2006).
The factors the trial courts must consider in determining the best interests of a child are many; they include, but are not limited to, the child’s needs; the home environments offered by the parties; the characteristics of the parties, including their character and mental health; the relationships between each parent and the child; and “any other relevant matter the evidence may disclose.” Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981). Finally, when the trial court does not provide specific findings of fact, as in this case, we will assume that the trial court made those findings that would be necessary to support its judgment so long as such findings would not be clearly erroneous. See, e.g., Kelly v. Kelly, 981 So.2d 423, 426 (Ala.Civ.App.2007).
Aside from the mother’s admitted past problems with drugs and depression, nearly every factor brought into evidence that the trial court might have weighed in making its custody determination was presented in the form of disputed testimony. The *188 father testified, and the mother admitted, to her having had flares of temper in years past that might have been caused by her prescription drugs. The mother testified, however, that she had improved, and she added that the father had been subject to violent outbursts as well. Each party accused the other of domestic violence, drug or alcohol problems, and other incidents of bad conduct.
Both parents, and family members called as witnesses by both parents, testified that the parents were loving and attentive toward the child. The mother testified that she had essentially conquered her problems with prescription drugs, and at the time of trial she was attending college in order to improve her earning capacity. The father was earning over $60,000 per year, but he admitted that he often worked 6 10-hour days per week, limiting the time he could spend with the child.
With respect to the protection order entered against the mother early in these proceedings, the circumstances accompanying the issuing of that order would have been another factor for the trial court to consider in its custody determination. The sharp conflicts in the parties’ testimony made the trial court’s task a pure matter of judging the credibility of witnesses, because the mother and the father contradicted each other as to which party presented the greater threat of domestic violence. In that regard, the father’s own representations to the court may have influenced the trial court’s estimation of his credibility. In applying for an ex parte protection-from-abuse order, the father filed a completed “Protection from Abuse Statistic Form” on which he alleged that there were “pending criminal charges related to this action” (emphasis added). In fact, the pending criminal charges were filed by the father’s sister in connection with a flstfight that the sister later admitted to having initiated with the mother. Later, in making an accusation that the mother had “stabbed” the father in the leg with a knife, in documents filed with the court and in testimony, the father alternately referred to the incident as a “stabbing” and as her having thrown a knife that had stuck in his leg, but he never attempted to show the presence of a bodily scar or evidence of an attempt to seek first aid. Further, and perhaps most significantly, the father had contacted the local Department of Human Resources (“DHR”) and caused them to investigate whether the mother was an unfit parent. Upon completion of its investigation, DHR determined that no intervention was indicated.
It is the province of the trial courts to estimate the credibility of witnesses, and if a trial court concludes that a witness was willfully untruthful, that court may disregard any or all of that witness’s testimony. Cochran v. Cochran, 5 So.3d 1220, 1233-34 (Ala.2008). Further, the trial court’s findings of fact will not be disturbed if the judgment based on the findings is supported by the evidence. A.M. v. J.S., 46 So.3d 957, 965 (Ala.Civ.App.2009). The evidence in the record, if viewed in a light favoring the mother, supports the trial court’s custody determination in this case. Given the deferential standard that applies to our review, we cannot reverse that determination.
The father also contends that the trial court erred in its property division. The trial court awarded the mother all of the personal property she requested, including items the father considered “disputed.” Further, the trial court awarded the mother a parcel of undeveloped real property unencumbered by a mortgage and awarded the father the marital residence, which is encumbered by its own *189 mortgage debt as well as by the remaining debt on the undeveloped property awarded to the mother. The father had owned the residence for several years preceding the marriage, and he purchased the undeveloped property during the marriage. The father asserts that, on balance, the trial court’s division of property was inequitable.
The standard of appellate review of property determinations in divorce cases is also deferential. A trial court’s judgment regarding the division of property based on evidence presented ore tenus is presumed correct. See, e.g., Jenkins v. Jenkins, 781 So.2d 986, 988 (Ala.Civ.App.2000). Property-division issues are within the trial court’s broad discretion, and a judgment must be plainly and palpably outside the scope of that discretion before the judgment can be disturbed on appeal. McClelland v. McClelland, 841 So.2d 1264, 1271 (Ala.Civ.App.2002) (citing cases). Further,
“[e]ach case is decided on its own peculiar facts and circumstances. Criteria which should be considered by the trial court when awarding alimony and dividing property include the length of the parties’ marriage, their ages, health, station in life, and future prospects; the source, value, and type of property owned; the standard of living to which the parties have become accustomed during the marriage and the potential for maintaining that standard; and, in appropriate situations, the conduct of the parties with reference to the cause of divorce.”
Currie v. Currie, 550 So.2d 423, 425 (Ala.Civ.App.1989). Ultimately, “ ‘ “[property divisions are not required to be equal, but must be equitable in light of the evidence, and the determination as to what is equitable rests within the sound discretion of the trial court.” ’ ” Ex parte Drummond, 785 So.2d 358, 361 (Ala.2000) (quoting Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ.App.1996), quoting in turn Duckett v. Duckett, 669 So.2d 195, 197 (Ala.Civ.App.1995)). And, as noted above, when the trial court is presented with conflicting ore tenus evidence, as it was in this case, “we must ‘ “ ‘view the evidence in a light most favorable to the prevailing party.’ ” ’ ” McClellan, 959 So.2d at 661 (quoting Diggs v. Diggs, 910 So.2d 1274, 1275 (Ala.Civ.App.2005), quoting in turn other cases).
In this case, the mother had not been employed outside the home since giving birth to the couple’s child, and at the time of trial she was only beginning to develop job skills. At the same time, the trial court heard disputed testimony tending to prove that, at various times between the father’s initiation of these proceedings and the time of trial, the father had harassed the mother in various ways, including allegedly killing her dogs. The father’s earning capacity, which was substantial, was demonstrated in his own exhibits. Assuming, as we must, that the trial court’s determination of credibility favored the mother, we cannot conclude that the trial court’s property division in this case was plainly and palpably outside the scope of the trial court’s discretion.
Finally, the father contends that the trial court erred in its calculation of child support. The trial court ordered the father to pay $760 per month as child support, retroactive to the date the father initially filed his complaint for a divorce. Since the father had been paying less than that amount from the time the parties had separated, the trial court determined that the father owed the mother an arrearage of $3,510 that had accrued at the time the judgment was entered. The trial court did not provide any findings of fact as to child support in its judgment, nor did the trial court refer to Rule 32, Ala. R. Jud. Admin., *190 or indicate how it had calculated its award of child support.
“We have routinely reversed judgments based upon failures by trial judges to complete CS-42 forms when we cannot discern the basis for [a] child-support award from the record.” Farnell v. Farnell, 3 So.3d 203, 206 (Ala.Civ.App.2008). A trial court may deviate from the guidelines of Rule 32 only if that court makes written findings of fact, based on evidence presented to it, to support the deviation. Id. In this case, the documentary evidence as to the father’s earnings consisted of, among other things, his most recent payroll notice and a Form CS-42 he had completed. The father’s CS^2 form suggested an annual income of $60,000, while the payroll notice suggested an annual income potential of nearly $80,000, based on hourly earnings and overtime indicated in that payroll notice.
The amount at which the trial court arrived — $760—would be consistent with Rule 32, Ala. R. Jud. Admin., based the father’s claim of income near $60,000, if the trial court had used the guidelines under that rule that went into effect for cases filed after January 1, 2009. Under the preface relating to the scope of that rule as amended, however, this case is governed by Rule 32 as it read immediately before the 2009 amendment. Under the earlier version of Rule 32 that applies to this case and the guidelines chart then in effect, if the father’s income was $60,000, his child-support obligation would be $652, the amount shown in his proffered CS-42 form. If the trial court imputed a higher income to the father, his child-support obligation under the version of Rule 32 that applies in this case could range up to $804. Clearly, we have insufficient information in the record to enable us to determine how the trial court arrived at its child-support award, and we must reverse the judgment as to that award and remand this case for the trial court to provide findings of fact or its computations that support the child-support obligation it has determined. Because the trial court’s determination of the father’s child-support arrearage was based on the $760 monthly child-support award, that aspect of its judgment is also reversed and remanded for further proceedings.
Based on the facts and authorities discussed above, the trial court’s judgment is affirmed as to its custody determination, its division of marital property, and as to the matter of the mother’s alleged subornation of perjury. As to the trial court’s award of child support, which of necessity determines the child-support arrearage to be charged to the father, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and BRYAN and MOORE, JJ., concur.
THOMAS, J., concurs in the result, without writing.