MOORE, Judge,
concurring in the result.
J.D.K. (“the father”) and S.M.M. (“the mother”) executed an agreement settling their divorce action, which, among other things, provided that the mother would have sole physical and legal custody of the parties’ daughters, L.J.K., born on December 27, 2007, and S.R.K., born on December 2, 2009, and that the father would have “[s]upervised visitation at the discretion of the [mother], supervised by the [mother] or person of her choice at places designated by the [mother].” The attorney who drafted the settlement agreement on behalf of the mother testified that he had included the “unusual” provision requiring supervised visitation at the discretion of the mother because, among other things, the father had recently been convicted of second-degree rape of a minor female and had registered with the state as a convicted adult sex offender.[4] The Marshall Circuit Court (“the circuit court”) entered a consent judgment on July 26, 2011, incorporating the agreement without conducting an evidentiary hearing.
For three or four months following the entry of the divorce judgment, the mother allowed the father to visit with the children on multiple occasions, all without incident or complaint. The mother testified that she sometimes left the children with the father while she went running, although, she said, she could always observe their interactions. A few months after the divorce, however, the mother decided to end all visitation between the father and the children. That decision led the father, on January 5, 2012, to petition the circuit court to modify the visitation provisions of the divorce judgment.[5] At trial, the father requested any reasonable modification of the divorce judgment that the circuit court would allow him in order to spend parenting time with his daughters, including regular unsupervised visitation “because of the lack of evidence against him.”
On August 27, 2012, the circuit court awarded the father pendente lite super *1124 vised visitation with the children.[6] After a lengthy trial conducted over the course of three years, during which over a dozen fact and expert witnesses testified, the circuit court awarded the father regular, unsupervised visitation with the children. In its August 28, 2014, judgment, the circuit court found:
“There was no credible and/or reliable evidence that the parties’ minor children have been, nor are in future danger of being, sexually or physically abused by the [father]. The Court relied heavily upon the expert testimony of several witnesses, taken as a whole.
[[Image here]]
“... There has been a material change in circumstances since the Judgment of Divorce that justifies a change in visitation and said change is in the best interest of said minor children. There was also no evidence presented that the previous illegal sexual relationship that [the father] had has had a detrimental effect on the children.”
The mother appeals, arguing that the circuit court erred in modifying the visitation provisions of the divorce judgment.
In S.A.N. v. S.E.N., 995 So.2d 175 (Ala.Civ.App.2008), a father who had been awarded unsupervised-visitation rights with his children pleaded guilty to first-degree sexual abuse following sexual acts with the mother’s sister, who was a minor. After his conviction, the mother would not allow the father to visit with their children on the ground that the Alabama Community Notification Act (“the CNA”), Ala.Code 1975, former § 15-20-20 et seq., prohibited an adult criminal sex offender from “establishing] a residence or any other living accommodation where a minor resides.” Ala.Code 1975, former § 15-20-26(c). The parties submitted that controversy to the trial court, agreeing that the father would be allowed to visit with the children at his home if the CNA did not prohibit such visitation. Upholding that agreement, the trial court, upon finding that § 15-20-26(c) did not preclude it, awarded the father unsupervised overnight visitation with the parties’ children at the father’s home, and the mother appealed. On appeal, this court agreed with the trial court that the CNA did not preclude an adult criminal sex offender from visiting with his children without supervision at the home of the criminal sex offender so long as the children did not reside there.[7] However, this court also held that, by enacting the CNA, the legislature had intended that trial courts would continue to exercise their traditional duty to protect children by awarding unsupervised visitation with an adult criminal sex offender only upon a determination, based on sufficient evidence, that such visitation did not expose the children to an undue risk of sexual abuse and otherwise served the best interests of the children. This court reversed the judgment and remanded the case for the trial court to conduct an individualized assessment of the facts to assure the protection of the children’s safety and other interests. In the present context, the principles from S.A.N. establish that a trial court can modify a judgment so *1125 as to allow an adult sex offender unsupervised visitation with his or her child if a probing inquiry of the particular circumstances of the case shows that visitation to be appropriate.
Before removing a supervision restriction, a trial court must determine that the circumstances existing at the time of the entry of the judgment imposing that restriction have materially changed so that removal of the restriction would serve the best interests of the child. Long v. Long, 781 So.2d 225, 227 (Ala.Civ.App.2000).[8] Generally speaking, a judgment establishing a particular form and mode of visitation, like a judgment establishing a particular custody arrangement, “is conclusive of the interest of the child and the rights of the parents, so long as the status at the time of the [judgment] remains without material change....” Messick v. Messiah, 261 Ala. 142, 144, 73 So.2d 547, 549 (1954). Thus, again generally speaking, “[a]ny change to the trial court’s supervised-visitation award would have to be based on new evidence of the suitability of unsupervised visitation.” Barrett v. Barrett, 183 So.3d 971, 974 (Ala.Civ.App.2015). However, when a trial court enters a consent judgment based strictly on an agreement of the parties, that court, in deciding whether its judgment should be modified based on a material change of circumstances, may also consider facts that existed at the time of the entry of the earlier judgment but that were not disclosed in the earlier proceedings. See C.P. v. W.M., 806 So.2d 395, 396-97 (Ala.Civ.App.2001). Applying those general principles to this case, the circuit court, in inquiring into whether it was appropriate to lift the visitation restrictions imposed in the parties’ divorce judgment and to allow the father, an adult sex offender, regular, unsupervised visitation with his children, could consider all the facts, including those existing, but not brought to light, at the time of the entry of the divorce judgment.
In this case, the circuit court determined from the evidence that there had been a material change in the circumstances and that regular, unsupervised visitation with the father would serve the best interests of the children without subjecting the children to the risk of sexual abuse. The question whether visitation restrictions should be modified is a question of fact for the trial court to decide “on a. case-by-case basis, depending on the particular facts and personalities involved.” Butler v. King, 437 So.2d 1300, 1302 (Ala.Civ.App.1983). When a trial court uses a combination of oral testimony, transcribed testimony, exhibits, and other documentary evidence to reach its determination, the ore tenus rule applies, and this court must presume that the trial court correctly determined the facts necessary to its judgment. Charles Israel Chevrolet, Inc. v. Walter E. Heller & Co., 476 So.2d 71 (Ala.1985).[9] This court reviews the evidence solely to determine whether substantial evidence supports the trial court’s judgment. See Ala.Code 1975, § 12-21-12(a) (“Proof by substantial evidence shall be required for purposes of testing the sufficiency of the evidence to support an issue of fact in *1126 rulings by the court.... ”). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).
The evidence was clear and undisputed that the father, while acting as a youth pastor, entered into a romantic and sexual relationship with a 14-year-old girl that culminated in two acts of sexual intercourse in February and March 2011. The father ultimately confessed to his criminal conduct and pleaded guilty to second-degree rape on April 26, 2011. In May 2011, he began counseling with Craig L.W. Bo-den, a pastor and a licensed professional counselor with training in male sexual addiction. At that point, Boden was also counseling the mother separately because she was contemplating reconciling with the father. However, the mother terminated the counseling sessions after deciding to divorce the father at the end of July 2011.
Following the divorce, the father continued to seek counseling from Boden until September 2011 when, according to a letter written by Boden on May 29, 2013, the two mutually decided to conclude the counseling “as it was no longer necessary to continue the sessions.” In a letter dated October 17, 2011, Boden stated regarding the father: “It is my opinion that he is not a danger to harm his, or anyone else’s children.” At trial, Boden testified that, during her counseling sessions, the mother had told Boden that the father had never sexually abused the children. The evidence shows that the mother had had both children examined by them pediatrician and a least one other doctor, both of whom had found no physical evidence indicating that the children had been sexually abused. Boden testified: “[I]n my opinion I found no evidence that was told to me that there had been abuse, and so I see nothing I can say definitively that I would think [the fathei-] is at risk of abusing his children.” Boden also testified:
“THE COURT: You have had training, as I understand, in sexual addiction as it relates to men. But as part of that training, did you learn or have any workshops or any training, any reading or any experience relating to whether or not a person that was attracted toward adolescents and/or had a sexual relationship with an adolescent would be a danger to other children or other adolescents?
“BODEN: I’ve not found that to be true. I mean, as a judgment I have read things like — well, my mind’s slipping — several books on sexual addiction. I’ve done seminars at the American Association of Christian Counselors world conference where we do several workshops. But specifically is it possible? Sure, it’s possible that someone could venture out in other areas. But my opinion in this case it’s not, but it’s opinion.”
The father also received psychiatric care from Dr. Marilyn Elizabeth Lachman, who first evaluated the father on July 16, 2011. Dr. Lachman drafted a report dated August 5, 2013, in which she stated:
“There is no clinical evidence by any appropriately qualified professional, that has ever been brought to my attention, that shows that the [parties’] two minor daughters have ever been in any danger of abuse and/or neglect under the direct parenting of [the father]....
[[Image here]]
“I have had the opportunity to evaluate [the father] for any risk of abuse or neglect, of any type, of his minor children.
*1127 “I have evaluated [the father] for his capacity to maintain himself safely and appropriately in the community as well as parenting his two minor children safely and appropriately. A summary of my findings is as follows:
[[Image here]]
“3. [The father] has the capacity to understand the ramifications of maintaining himself safely and appropriately in the community as well as parenting his two minor children safely and appropriately, in greater depth than merely reciting the ramifications back to me voluntarily and without coercion and lacks and rejects any kind of sexual deviant thought processes.
“4. [The father] has the capacity to maintain himself safely and appropriately in the community as well as parenting his two minor children safely and appropriately with no symptoms of sexually deviant thought processes.
“In the life of this caring and gentle man, this experience is a one time peccadillo without any evidence to suggest a past recurring pattern of behavior or a future recurring pattern of behavior. In my professional opinion, it is imperative not to rob the children the experience of growing up with this caring and decent father as an important part of their Uves.
“[The father] at this time and at any time in his longitudinal history, has no psychiatric obsessive preoccupations, and pathology that would lead to any propensity to have sexual deviant thought processes, that would limit his capacity to appropriately parent his two minor children without supervision and to maintain himself safely and appropriately in the community.”
At trial, Dr. Lachman testified: “As far as being a threat, there is no risk higher than any in the general population of [the father’s] participating unsupervised with his children and being a father to his children.” Dr. Lachman also opined that the father will not engage in wrongful conduct in the future due to lack of a pattern of past misconduct and his recognition of the wrongfulness of his sexual abuse of the minor.
The father eventually joined a new church that conducts a weekly program for men struggling with sexual issues. The father assumed an active leadership role in that group. He regularly takes educational material to the group’s meetings that instruct the membership about methods of avoiding, and surrendering to, sexual temptation. Craig Johnson, a fellow church member, testified that he has never seen anyone as focused as the father on trying to make himself a better person and to make sure that “it never happens again.” Ed Kleiman, a missionary and long-time friend of the parties, testified that father has changed for the better in the years since the parties’ divorce:
“I have seen the use of his time. I have seen use of his time in the study of the Bible, the study of materials involving the area of sexual purity. I’ve seen him help others at the church. I’ve seen them talk, heard them talk much. I’ve sat in the group that he was leading •with these men and heard and saw the impact he was having and continued to see that every single time I was there and continued to hear that with all of the difficult conversations that I put him through on the telephone.”
Kleiman also testified that the father had “resolved to take every action Biblically that’s possible to prevent [his sexual misconduct from] ever happening again.”
The mother introduced some evidence designed to show that the father had acted inappropriately in the past both with the parties’ children and with other unrelated *1128 female children. That evidence, standing alone, may suggest that the father has deviant sexual compulsions, as Presiding Judge Thompson concludes in his dissent, 208 So.3d at 1133 (Thompson, P.J., dissenting), but that evidence was disputed at trial. See Ex parte H.H., 830 So.2d 21, 25 (Ala.2002) (holding that appellate court cannot reweigh disputed evidence on appeal). In resolving that dispute, the circuit court reasonably could have concluded that the mother and her witnesses were exaggerating or mischaracterizing the conduct of the father, especially considering that the mother had denied any sexual abuse of the children by the father to Boden. Likewise, the circuit court could have reasonably determined from the father’s explanations that the acts showing his alleged pattern of sexual misconduct in the past either had not occurred[10] or did not amount to sexual misconduct and that he was not “grooming” the children for future sexual abuse through his gifts. Finally, the mother relied on Deegan Mercer Malone, a clinical therapist and licensed professional counselor specializing in sexu-alized misbehavior, to provide expert-opinion testimony that the father has deviant sexual interest in teenage girls that generates a moderate risk of his committing sexual abuse in the future; however, Malone, who lacks any psychiatric training, relied heavily on an “Abel” test that she had administered to the father on one occasion on December 5, 2013, which test, she admitted, “a lot of the members of the scientific community” do not recognize as a valid analysis tool.[11] Dr. Lachman described that test as being only a “screening tool” that has no reliable diagnostic value when it is unsupported by clinical observations from a trained psychiatrist.
From Christmas and birthday cards that the mother had given the father during their marriage, it is clear that, before the revelation of his crime, the mother had considered the father to be a good parent to their daughters. The mother testified that, based on her observations while supervising visitation, the children seemed to enjoy their visits with their father. Two church members testified that the father acts appropriately around their children. Other than the concerns regarding the father’s alleged improper sexual predilections, which the circuit court rejected, no witness questioned the fitness of the father to parent the children.
Viewing the foregoing evidence in a light most favorable to the circuit court’s judgment, see Summers v. Summers, 58 So.3d 184, 187 (Ala.Civ.App.2010) (“[W]hen a trial court hears conflicting testimony, we must review the evidence in a light that favors the prevailing party.”), the circuit court could have reasonably reached the conclusion that a material change of circumstances had occurred and that allowing the father unsupervised visitation with the children served their best interests with *1129 out exposing the children to the risk of sexual abuse. Although I agree that the mother presented substantial evidence that would have supported a judgment denying the father’s modification petition, this court cannot reweigh the evidence and substitute its judgment for that of the circuit court. Ex parte H.H., supra. Because substantial evidence supports its factual findings, the circuit court acted within its discretion in removing the restrictions on the father’s visitation. Thus, I concur that the judgment is due to be affirmed.

. The attorney testified as follows:
''[By counsel for the mother]: Well, knowing what you know about [the father] in this situation, do you believe there is a good basis for putting into that agreement that his visitation with his children be supervised?
"A. Yeah. It was more than just the rape conviction that we did that. Can’t go into great detail about that because it's confidential with my client, but yeah.”

. In his petition, the father alleged that he “is not being allowed sufficient visitation with his minor children and [the father] believes it would be in the best interest of his minor children to have regular contact with their father.”

. The circuit court conducted an evidentiary hearing on the father’s motion for pendente lite visitation on May 2, 2012, and denied that motion on May 7, 2012. However, on August 27, 2012, the circuit court awarded the father pendente lite supervised visitation and telephone contact with the children based on an agreement of the parties.

. Our legislature has since repealed the CNA and enacted the Alabama Sex Offender Registration and Community Notification Act, Ala. Code 1975, § 15-20A-1 etseq., which prohibits an adult sex offender from having overnight visits with a minor in enumerated circumstances. Ala.Code 1975, § 15 — 20A—11 (d).

. I agree with the main opinion that the " ‘material-promotion’ custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), ‘does not govern ... visitation issues.’” 208 So.3d at 1122 n. 2 (quoting Gallant v. Gallant, 184 So.3d 387, 400 (Ala.Civ.App.2014)).

. I note that, although the trial judge who entered the modification judgment did not preside over the 2012 evidentiary hearings in this case, the trial judge informed the parties that he had listened to the recordings of the testimony from those hearings.

. A Missouri child-protective agency apparently found one report of child sexual abuse asserted against the father and alleged to have occurred while the father was residing in Missouri and attending seminary school to be "substantiated" based on an interview with the alleged victim during the course of the underlying litigation. However, the father testified: "I’m sure you've read her accusations, and what she’s accusing me of is actually totally impossible to have happened.” The record indicates that the mother attempted to depose the alleged victim, but the father objected on the ground that a Missouri probate court had adjudged the victim to be partially incapacitated due to psychological problems and drug abuse on September 17, 2013, and the deposition was not taken, No one attempted to introduce the report from the agency, which is not in the record.

. Malone also relied on the father’s alleged self-report to her of sexually fantasizing about teenage girls, which report the father denied.